KENNER LAW FIRM, P.C.
David E. Kenner, SBN 41425
Brett A. Greenfield, SBN 217343
16000 Ventura Boulevard, PH 1208
Encino, CA 91364
818 995 1195
818 475 5369 – fax

WADE, KELLY & SULLIVAN
733 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501
(907) 561-7743
(907) 562-8977 - fax

Attorney for Defendant Josef F. Boehm

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Sally C. Purser,<br><br>                Plaintiff,<br><br>          v.<br><br>Josef F. Boehm, Allen K.<br>Bolling, and Bambi Tyree,<br><br>                Defendants.<br>_____ | )<br>) DEFENDANT JOSEF BOEHM'S<br>) OPPOSITION TO PLAINTIFF'S SECOND<br>) MOTION FOR SUMMARY JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO.: A05-0085 (JKS) |

I.

**THE EXISTENCE OF GENUINE ISSUES OF FACT AND GENUINE ISSUES AS TO THE INFERENCES TO BE DRAWN FROM THE FACTS PROHIBIT A FINDING OF SUMMARY JUDGMENT.**

Purser's second motion for summary judgment relies entirely on her own sworn affidavit, and the sworn affidavit of convicted co-conspirator and recently dismissed defendant Bambi Tyree.

Bambi Tyree was dismissed by Purser as a defendant to the instant action one week prior to the filing of her affidavit in support of summary judgment. Purser's stance regarding Tyree's culpability and

1

1  testimony to the same is now dramatically different from her former

2  statements concerning Bambi Tyree:

3          **"He's a victim as much as I am, and you want to**
           **know who the fucking ring leaders are? Al, Leslie**
4          **and Bambi ok? And Everybody – they're getting off**
           **fucking – because Bambi snitches her little ass**
5          **around and lies about whatever the fuck she**
           **did..."**
6          *Purser Investigator Statement,*
           *Page 11, Lines 15-23*

7

8       In attempting to ascribe a motive for Purser to dismiss Tyree one

9  can only assume that dismissing Tyree would provide Purser with the

10 very affidavit that this Court suggested would be required to support

11 a motion for summary judgment in its November 9, 2006 Order denying

12 summary judgment as to liability.

13      During Purser's December 12, 2006 deposition, her attorney Darryl

14 Jones summed up the veracity, truthfulness and reliability of Purser's

15 testimony and undermined her credibility by stating:

16
           **" I don't see the link in the damage  yet, unless**
17         **you're trying to undermine credibility of a crack**
           **addict 15 years old at the time.  That's fine if**
18         **you think that can happen, <u>since a 15-year-old</u>**
           **<u>crack addict has no credibility</u>".**
19         *Purser deposition, page 16*

20      Counsel's motion now rests on the credibility of Purser's sworn

21 affidavit replete with false allegations stemming from her daily life

22 as a 15 year old self proclaimed "crack" cocain attic.

23      Boehm's investigation and discovery to date reveals the

24 following:

25      1. All of Purser's allegations regarding Boehm are disputed via

26 third party affidavits, deposition testimony, interviews  and written

27 discovery;

28

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

2. Purser has a prolonged history of drug abuse pre-dating her alleged relationship with Boehm. Purser knew and obtained her drugs from multiple sources including her mother Kathleen Purser and Bambi Tyree. Purser admits to the existence of criminal drug convictions and multiple instances of theft. Purser has exchanged sex for drugs with numerous individuals and maintained relationships within a network of drug dealers and drug addicts;

3. Bambi Tyree with the assistance of Sally Purser and others with whom she was involved engaged in a plot to keep Mr. Boehm high on "crack" cocain, incoherent and in state of severe psychosis to enable them to steal his property, cash, cars and too seek to gain control over his financial resources;

4. Boehm never engaged in any sexual activity or conduct with Sally Purser, never knowingly provided her with drugs, and was not responsible for her drug addiction and behaviors including but not limited to trading sex for drugs, theft of money and property, drug possession and sales, and drug convictions.

Purser argues that Boehm should be held liable for her drug addictions and her claimed psychological and physiological damages.

There exists genuine issues of fact and genuine issues as to the inferences to be drawn from the facts. Where reasonable minds differ on inferences arising from undisputed facts, the court should deny summary judgment.

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

# II.

## STATEMENT OF UNDISPUTED FACTS

The facts presented by sworn testimony, third party affidavits, interviews and written discovery to support the opposition to summary judgment are undisputed as follows:

1. Purser obtained "crack" cocain and other drugs from numerous sources, including but not limited to Bambi Tyree, Kathleen Purser, Al Bolling, Leslie Williams, Jay Whaley, Carl Bucher, Kathleen Purser's various drug connections and numerous other individuals before, during and after the time period encompassing the alleged actions of Boehm. See *Purser Deposition, Purser Investigator Interview, Tina Arndt Declaration, Vince Blomfield Declaration, Erin Axt Deposition Testimony*;

2. Purser smoked "crack" cocain with her mother Kathleen Purser, Bambi Tyree, Erin Axt, Carl Bucher, Al Bolling, Jay Whaley and numerous individuals before, during and after the time period encompassing the alleged actions of Boehm. See *Purser Deposition, Purser Investigator Interview, Tina Arndt Declaration, Vince Blomfield declaration, Erin Axt Deposition Testimony*;

3. Purser began smoking marijuana, snorting cocain, using ecstasy, and drinking alcohol as early as 12 years old. *See Purser Deposition*;

4. Purser was suspended from junior highschool for drugs, specifically ecstacy, prior to the time period encompassing the alleged actions of Boehm. *See Purser Deposition, Purser Investigator Statement;*

5. Purser admits to theft of money and automobiles from numerous individuals including Boehm. Said actions were committed with Bambi

4

1  Tyree and others. *See Purser Deposition*, *Purser Investigator*

2  *Statement*, *Purser Grand Jury testimony*, *Erin Axt Deposition Testimony*;

3      6. Purser engaged in numerous acts of sex with older men and

4  young girls before, during and after the time period encompassing her

5  claims against Boehm. *See Purser Deposition, Purser Investigator*

6  *Statement, Tina Arndt Declaration, Vince Blomfield Declaration, Purser*

7  *Grand Jury testimony, Erin Axt Deposition Testimony*;

8      7. Purser traded sex for "crack" cocain with numerous

9  individuals, including older men and drug dealers. In addition,

10  Purser's mother sold her to older men and drug dealers in exchange for

11  "crack" cocain. Said acts occurred before, during and after the time

12  period encompassing her claims against Boehm. *See Purser Deposition,*

13  *Purser Investigator Interview, Tina Arndt Declaration*;

14      8. Purser, 16 years old, lived with Jay Whaley, an older man,

15  convicted drug dealer and escort service operator who paid for her

16  living expenses and provided her an unlimited source of "crack" cocain

17  in exchange for sex during the time period encompassing her claims

18  against Boehm. *See Purser Deposition, Purser Investigator Interview*

19      9.  Purser identifies a conspiracy by and between Tyree, Bolling

20  and Williams to keep Boehm high on "crack" cocain and steal from him.

21  Purser further stated that Tyree tried to harm Boehm by tainting his

22  food and drugs in an effort to keep him incoherent and within her

23  control.  Purser referred to tyree as the "ring leader".*See Purser*

24  *Deposition, Purser Investigator Statement, Purser Grand Jury*

25  *Testimony, Vince Blomfield Declaration, Tina Arndt Declaration*;

26      10. Bambi Tyree systematically gained control over Boehm by

27  providing him dirty "crack" cocain that would cause sickness,

28  sleepiness, incoherence and an inability to coherently assess his

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

surroundings. Boehm's state of incoherence and inability to control his surroundings was witnessed by numerous individuals. *See Tina Arndt Declaration, Vince Blomfield Declaration, Purser Investigator Statement;*

11. Tyree and others ensured that Boehm remained "high" from the moment he awoke until the time he passed out, determining who she would allow to be in the house and how she would use other young girls, including Purser, to further try to control Mr. Boehm. *See Purser Investigator Statement, Tina Arndt Declaration, Vince Blomfield Declaration, Report of Gary A. Jacobsen, M.D,;*

12. Bambi Tyree abused Mr. Boehm both physically and psychologically with threats of calling law enforcement and by bringing other men to physically intimidate Mr. Boehm, by stealing his personal property, cash, cars and then charging him to return the property. *See Purser Investigator Statement, Tina Arndt Declaration, Vince Blomfield Declaration, Erin Axt Deposition Testimony, Report of Gary A. Jacobsen, M.D.;*

13. Boehm never engaged in any sexual activity or conduct with Sally Purser, never knowingly provided her with drugs, and was not responsible for her drug addiction and behaviors including trading sex for drugs, theft, and drug convictions. *See Purser Deposition, Purser Investigator Statement, Purser Grand Jury Testimony, Vince Blomfield Declaration, Tina Arndt Declaration*, *Report of Gary A. Jacobsen, M.D.;*

14. Boehm's deteriorating mental and physical condition did render him unable to engage in the alleged sexual activity complained of. *See Tina Arndt Declaration, Vince Blomfield Declaration; Report of Gary A. Jacobson, M.D.;*

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

15. Bambi Tyree with the assistance of Sally Purser and others with whom she was involved engaged in a plot to keep Mr. Boehm high on "crack" cocain to enable them to steal his property, cash, cars and too seek to gain control over his financial resources. *See Purser Investigator Statement, Purser Deposition, Tina Arndt Declaration, Vince Blomfield Declaration, Erin Axt Deposition Testimony, Report of Gary A. Jacobson, M.D.;*

16. Bambi Tyree was a self proclaimed "pimp" and bragged about knowing every local drug dealer. Bambi Tyree obtained most of her drugs from Leslie Williams who was her primary supplier and in turn supplied drugs to Purser and countless others. *See Tina Arndt Declaration, Vince Blomfield Declaration, Purser Investigator Statement;*

17. Bambi Tyree is a career hustler who's scam was to identify men with money and play the role of a girlfriend who traded sex for drugs. Once the money was gone, so was Bambi Tyree. Bambi Tyree befriended and used several young girls, including Sally Purser for the purpose of promoting her scam. Tyree's scams were furthered through physical intimidation, black mail and threats of calling law enforcement. *See Vince Blomfield Declaration, Tina Arndt Declaration, Sally Purser Investigator Statement;*

18. Boehm's extreme degree of mental mismanagement of perceptions, emotions, impulses, judgments, etc., with resultant irrational behaviors, is consistent with his pattern of use of extremely high dose of crack cocain during the period of time when he is alleged to have knowingly and/or intentionally committed the alleged acts. *Report of Gary A. Jacobsen, M.D.;*

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

19. Boehm's total mental function impairments were so severe as to prevent him from being able to act with knowledge and intent during the period of time when he is alleged to have knowingly and/or intentionally committed the alleged acts. *Report of Gary A. Jacobsen, M.D.;*

### III.

#### SUMMARY JUDGMENT STANDARDS

The issues to be considered on a motion for summary judgment are not those set forth in the pleadings but are those presented by the materials submitted in support of the summary judgment motion. *Yates v. Transamerica Ins. Co., Inc.*, 928 F.2d 199, 202(6th Cir. 1991)

In making its determination, however, the court must look to the evidence offered by the nonmoving party in the light most favorable to that party, must accept all justifiable inferences on the nonmoving party's behalf, and must reject any contrary evidence and inferences. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

Overall, the nonmoving party needs to show that the record contains sufficient specific facts--by demonstrating that the moving party either ignored or mis-characterized relevant facts--such that there exists a genuine dispute of material fact. Raising alternate inferences, on the other hand, might be sufficient to defeat a motion for summary judgment. Because the court must draw all reasonable inferences in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51, 106 S. Ct. 2505, 91 L. Ed. 2d 202, 4 Fed. R. Serv. 3d 1041 (1986).

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

1    Moreover, not only must there be no genuine issue of fact, in

2  order for summary judgment to be granted there must also be no genuine

3  issue as to the inferences to be drawn from the facts. *World-Wide*

4  *Rights Ltd. Partnership v. Combe Inc.*, 955 F.2d 242 (4th Cir. 1992).

5  Where reasonable minds could differ on inferences arising from

6  undisputed facts, the court should deny summary judgment. *Anderson v.*

7  *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d

8  202, 4 Fed. R. Serv. 3d 1041 (1986).

9

10

11                                **IV**

12  **PLAINTIFF AGAIN INCORRECTLY RELIES ON THE PLEA AGREEMENT TO SUPPORT HER ARGUMENT FOR LIABILITY**

13    This Court has already ruled that the Plea Agreement entered into

14  by Boehm does not impute liability as it relates to Sally Purser.

15

16    The Court's November 9, 2006 Order regarding plaintiff's first

17  motion for summary judgment, incorporated herein as Exhibit "A",

18  states, "Boehm's admissions in the criminal case are admissible, but

19  not conclusive in the present case". The court went on to state,

20  "While boehm's conviction and admissions are strong evidence in

21  Purser's favor, standing alone, they do not fully establish

22  liability".

23    Purser's reliance on her own sworn affidavit and that of criminal

24  co-defendant and former civil defendant Bambi Tyree are replete with

25  false statements. Furthermore, the evidence presented by Boehm via

26  deposition testimony, third party affidavits, investigator statements

27  and medical evaluation dispute all of Purser's allegations creating

28  multiple triable issues of material fact.

9

1    Purser has not made the requisite showing of liability in order
2  to gain summary judgment. There are triable issues of fact that must
3  be decided by a jury of her peers.

4

5

6                                    **V.**
   **BOEHM'S RESPONSES TO DISCOVERY CREATE GENUINE ISSUES OF MATERIAL**
7                    **FACTS AS TO EACH AND EVERY ALLEGATION**

8      Josef Boehm's response to Purser's third set of discovery,
   incorporated herein as Exhibit "B" contain specific denials to each
9  and every allegation set forth in Purser's complaint including but not
10 limited to the following:
11

12     1. Knowingly recruiting and enticing Purser to engage in
13        sex;

14     2. knowingly providing cocain and illegal substances to
15        Purser;

16     3. that Purser became addicted to illegal substances
17        provided by Boehm;

18     4. forcing Purser to have sex with Boehm and others;
19
20     5. that he forced to Purser to solicit other juveniles for
          the purpose of sex;
21

22     6. that he provided airline tickets to Purser and her
23        mother to prevent her from cooperating with a criminal
24        investigation.

25

26

27

28

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

**VI.**

**THIRD PARTY WITNESS TINA ARNDT'S DECLARATION CREATES GENUINE ISSUES OF MATERIAL FACTS AS TO EACH AND EVERY ALLEGATION**

At her December 12, 2006 deposition, Sally Purser identifies Tina Arndt as an individual who witnessed and can corroborate the alleged acts of Boehm which support her claims.

Tina Arndt's sworn affidavit, incorporated herein as Exhibit "C", disputes all of Purser's claims as follows:

**1. LESLIE WILLIAMS PROVIDED DRUGS TO TYREE WHO IN TURN PROVIDED TO OTHERS**

Arndt was familiar with all of Boehm's acquaintances, friends and family. *See Paragraph 4.* She identifies Leslie Williams as a cocain dealer who sold crack cocain to Mr. Boehm on a daily basis. He provided drugs to Bambi Tyree who would in turn provide to others. *See Paragraph 7.*

**2. TYREE AND WILLIAMS PROVIDED "DIRTY" CRACK TO BOEHM IN ORDER TO MAINTAIN CONTROL OVER BOEHM'S PERSON AND PROPERTY**

Arndt states that Boehm was provided "dirty" crack cocain by Tyree and Williams. *See Paragraph 8.* The various affects resulting from the drugs provided to Boehm included an obsessive desire for total privacy and security which included drastic measures to keep people out of his home. The "dirty" crack provided by Tyree and Williams had aspects of opiate drug affects that would cause Boehm sickness, sleepiness, incoherence and an inability to coherently assess his surroundings *See Paragraph 6 and 9.*

Bambi Tyree overcame the free will of Mr. Boehm by ensuring he remained high from the moment he awoke until the time he passed out. Tyree determined who she would allow to be in the house and how she

would use other young girls to further try to control Mr. Boehm. Tyree abused Mr. Boehm both physically and psychologically in order to steal his personal property, cash and cars. *See Paragraphs 11-13.*

### 3. BOEHM'S RESIDENCE WAS UNDER CONSTANT SIEGE BY TYREE, PURSER AND THEIR COHORTS

Arndt identifies people breaking out a window in the back downstairs bedroom of Boehm's residence to give them a consistent means of entering and leaving the Boehm home at will. *See Paragraph 10.*

### 4. PURSER HAD MULTIPLE DRUG SOURCES AND EXCHANGED SEX FOR DRUGS WITH NUMEROUS INDIVIDUALS

Bambi Tyree befriended Sally Purser and her mother Kathleen Purser. Arndt was aware that Tyree provided "crack" cocain to Sally Purser and was aware that Sally Purser's mother Kathleen was "pimping" her out to drug dealers in exchange for "crack" cocain. *See paragraph 14.*

### 5. ARNDT DISPUTES PURSER'S ALLEGATIONS OF SEX WITH BOEHM

Whenever Sally Purser was at Mr. Boehm's house she was almost always with Arndt. Mr. Boehm trusted Arndt who in turn had his permission to be in any area of his home. This gave her the opportunity to become familiar with the daily activities and events that were regularly taking place.

Arndt observed Sally Purser to be present at Mr. Boehm's house on some occasions and <u>can personally attest to the fact that at no time did he ever engage in any sexual activity or conduct with her</u>.

### 6. BOEHM'S SEVERE PSYCHOSIS, LACK OF CONTROL OF THOSE AROUND HIM AND INABILITY TO ENGAGE IN THE ALLEGED SEXUAL ACTIVITY

Mr. Boehm seldom left his bedroom, often never went downstairs and hardly ever knew who was in his house. With his degree of paranoia

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

it was almost impossible for him to deal with a number of people present that he could not keep track of. *Paragraph 17*

Mr. Boehm often became afraid to stay in his own home for the above reasons. He started moving from hotel to hotel because the size of the room and the physical circumstances enabled him to know who was present and to feel at least a minimally reduced paranoia over the small surroundings to which he felt he had more control. *Paragraph 18*

Prior to starting to stay at hotels, Mr. Boehm, in an attempt to clear his house of everyone in it, including but not limited to Bambi Tyree and Sally Purser, actually stuffed and clogged the plumbing so as to flood the entire downstairs portion of his house. He also disconnected the heaters and notwithstanding all these efforts, Bambi Tyree would still not leave. *Paragraph 19*

**7. TYREE WITH THE ASSISTANCE OF PURSER AND OTHERS SCHEMED TO STEAL AND CONTROL BOEHM'S PROPERTY, CASH, CARS AND FINANCIAL RESOURCES**

Arndt observed Bambi Tyree with the assistance of Sally Purser and others with whom she was involved engaged in a plot to keep Mr. Boehm high on "crack" cocain to enable them to steal his property, cash, cars and too seek to gain control over his financial resources. *See Paragraph 21.*

**VII.**

**THIRD PARTY WITNESS VINCE BLOMFIELD'S DECLARATION CREATES GENUINE ISSUES OF MATERIAL FACTS AS TO EACH AND EVERY ALLEGATION**

Vince Blomfield's Declaration is incorporated herein as Exhibit "D". Mr. Blomfield had a personal relationship with Bambi Tyree and describes her as an experienced "crack" cocain user. Tyree provided Blomfield with "crack" cocain on several occasions and smoked "crack" cocain with on several occasions. *Paragraph 2*

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

1. **TYREE WAS A WELL KNOWN HUSTLER OF MEN WITH MONEY. PURSER CONTRIBUTED TO HER SCAMS**

Bambi Tyree was a self proclaimed "pimp" and bragged about knowing every local drug dealer. Bambi Tyree obtained most of her drugs from Leslie Williams who was her primary supplier. Bambi Tyree is a well known hustler who's scam was to identify men with money and play the role of a girlfriend who traded sex for drugs. Once the money was gone, so was Bambi Tyree.

Bambi Tyree befriended and used several young girls, including Sally Purser for the purpose of promoting her scam. Tyree's scams were furthered through physical intimidation, black mail and threats of calling law enforcement. *Paragraphs 4-5.*

Also present with Bambi Tyree on a regular basis, in addition to Leslie Williams, was Al Bolling. Mr. Bolling was also a supplier of "crack" cocain. Mr. Blomfield is aware that Bambi Tyree and Al Bolling have caused young girls to be strung out on heroin in order to further their own financial needs. *Paragraph 15.*

2. **BLOMFIELD WAS A VICTIM OF TYREE'S SCAM**

It was common for Bambi Tyree to get Blomfield high on "crack" cocain and then steal his money when he was asleep and one occasion she absconded with $25,000.00. Blomfield describes Bambi Tyree as one of the best hustlers he has have ever seen and systematically scammed him out of approximately $250,000.00 while keeping him high on "crack" cocain. *Paragraph 6*

3. **TYREE OVERCAME THE FREE WILL OF BOEHM IN ORDER TO STEAL HIS PERSONAL PROPERTY, CASH AND CONTROL HIS FINANCES**

Mr. Blomfield has personal knowledge of the fact that Bambi Tyree ran the aforementioned scam on a number of individuals including Josef

14

Boehm. He was around Mr. Boehm during this period of time and had conversations with him regarding Tyree's motives and actions.

Bambi Tyree overcame the free will of Mr. Boehm and began to control his life. She began to make all of the decisions affecting the day to day activities of Mr. Boehm. This would include ensuring he remained high from the moment he awoke until the time he passed out, determining who she would allow to be in the house and how she would use other young girls to further try to control Mr. Boehm. *Paragraphs 7-8*

Mr. Blomfield witnessed Mr. Boehm trying desperately  to get rid of Tyree who in turn threatened to black mail Mr. Boehm. In addition to her threats of black mail, Tyree demanded money from Mr. Boehm in exchange for leaving his home.

### 4. BOEHM'S SEVERE PSYCHOSIS AND LOSS OF CONTROL OF HIS SURROUNDINGS

In or around October, 2003, Mr. Blomfield stopped by Mr. Boehm's residence. Bambi Tyree was present with a half a dozen girls. He attempted to talk to Mr. Boehm, however, Bambi Tyree refused to let Blomfield near him. Regina Moore and Tina Arndt were also present. Bambi Tyree insulated Mr. Boehm from everyone as it was apparent that she was afraid to lose control of him. Mr. Boehm appeared to be incoherent and unaware of his surroundings. *Paragraphs 9-10*

Mr. Blomfield witnessed the dramatic effects the drugs had on Boehm including an obsessive desire for total privacy and security. This desire manifested itself in ways such as staying primarily in the upstairs of his home, installing a deadbolt lock on his bedroom door in the hope of preventing anyone from coming into his bedroom, installing a sophisticated alarm system which was kept activated 24

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

hours a day for the purpose of keeping people out of his home and certainly not for the purpose of keeping them trapped inside. Paragraph 11

Mr. Blomfield witnessed Mr. Boehm's psychosis become dramatically worse during his relationship with Bambi Tyree. With his degree of paranoia it was almost impossible for him to deal with a number of people present that he could not keep track of. On occasion, he would hold himself up in hotel rooms and disassemble all of the electronic equipment as a result of his severe paranoia. *Paragraph 13*

### 5. PURSER'S INVOLVEMENT IN TYREE'S SCAM, ADMISSION OF DRUG USE AND SEX WITH OLDER MEN

During his relationship with Bambi Tyree, Mr. Blomfield Stayed at Kathleen Purser's house for a short time. It was there that he met Sally Purser for the first time. Mr. Blomfield was sleeping in the bedroom when he was first approached by Sally Purser who inquired as to whether he was "Bambi's boyfriend". Sally Purser explained that upon meeting Bambi Tyree she smoked "crack" cocain with her.

Sally Purser also told Mr. Blomfield about an incident in which she, Bambi Tyree and a gentlemen named Tony Heffner got into a Jacuzzi together. Sally went on to boast that Bambi Tyree convinced her to have sex with him. During this conversation, Holly, a friend of Sally Purser was in the room. It was apparent to Mr. Blomfield that Sally Purser was attempting to obtain drugs and money from Mr. Blomfield in exchange for sex.   *Paragraph 16-17*

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

**VIII.**

**SIGNIFICANT MENTAL, EMOTIONAL AND PHYSICAL IMPAIRMENTS PREVENTED BOEHM FROM BEING ABLE TO ACT IN AN INTENTIONAL OR KNOWING MANNER AS ALLEGED BY PURSER**

On November 11, 2004, Gary A. Jacobsen, M.D. reviewed a series of records and reports filed in conjunction with the criminal action against Boehm, Tyree, Bolling and Williams. Dr. Jacobsen's report is incorporated herein as Exhibit"E".

Dr. Jacobsen based his opinions on the court files, reports, and several interviews with Boehm as well patterns and behaviors over his lifetime. Dr. Jacobsen's summary of opinions regarding Boehm revealed that between late 2001, and continuing until at least 12/22/03, Mr. Boehm's heavy use of "crack" cocain in combination with a variety of other factors related to chronic use such as intermittent sleep deprivation and/or malnutrition and/or **possible being given other substances without his knowledge,** caused significant mental, emotional and physical impairments which prevented Mr. Boehm from being able to act in an intentional manner that required the ability to think clearly with sound judgment; and be fully aware of what was occurring in his life due to altered perceptions.

**1. PURSER ACKNOWLEDGED THAT TYREE, WILLIAMS AND BOLLING ALTERED BOEHM'S FOOD AND DRUGS RENDERING HIM INCOHERENT**

Dr. Jcobsen's finding have been bolstered by the declaration of Tina Arndt and Vince Blomfield confirming the fact that Boehm's drugs were being altered by Williams and Tyree which in turn placed him in an incapacitated and incoherent state.

Sally Purser also confirmed the aforementioned conduct:

> "No. He didn't even know what the fuck was going on. He just wanted to get high and get off...And in order to get that done, you know, Allen and all these people made it a little more

17

1

**difficult...They were putting shit in his dope**
**though, I know they were...The dope gets you high**
**no matter what. I know they were putting shit in**
**his food...Yeah, because Leslie and stuff would**
**bring food over and it'd already be open and**
**stuff, and I like remember one time-oh, wow, I**
**don't know what the fuck it was sprayed with, but**
**I about puked".**

*Purser Investigator Statement*

*Page 48, lines 23-25, page 49, lines 1-14*

Boehm was being given unknown substances without his knowledge, which caused significant mental, emotional and physical impairments which prevented Boehm from being able to act in an intentional or knowing manner towards Purser as alleged in her complaint.

## 2. PURSER'S CAUSES OF ACTION REQUIRE KNOWING AND INTENTIONAL CONDUCT BY BOEHM

Purser's complaint alleges causes of action all of which require elements of specific intent an knowing actions. Her allegations of a conspiracy require an agreement and an overt act in furtherance of the conspiracy. The overt acts depended on by Purser never happened and furthermore, could not have happened due to Boehm's state of severe psychosis and incoherence. Purser claims the following:

1. Boehm <u>knowingly</u> recruited Purser;

2. Boehm <u>conspired</u> with Tyree, Bolling and Williams to get Purser addicted to cocain to <u>control</u> her and keep her within their grasp through threats and psychological <u>coercion</u>;

3. Boehm, Tyree, Bolling and Williams furthered their <u>conspiracy</u> by using illegal substances to <u>control</u> Purser and have sex with Purser;

4. Tyree would find drug dealers to supply Boehm with drugs he could use to entice Purser and keep her under his control;

5. Purser was forced through <u>coercion and intimidation</u> to labor directly for Boehm;

6. Purser labored, and endured Boehm's physical, verbal and sexual attacks because her will was completely overborne through the use of <u>coercion</u>, force and illegal substances

18

provided by the defendants, with the <u>intent</u> of overriding Purser's will;

Every one of Purser's causes of action require intent and knowing behavior. Not only did Boehm not engage in the aforementioned actions, he did not have the requisite ability to do so. Purser recognized that Boehm was a victim of Tyree, Williams and Bolling when making the following recorded statement to investigator Terry Shurtleff, incorporated as Exhibit "F":

> **"...I don't feel you know that Josef is a perpetrator in any of this. Like he is just as much a victim as I am of these three people, you know, let alone − let alone my circumstances are a little more harsh than his because I'm a young female victim to...okay?**
> *Purser Investigator Statement,*
> *Page 17, lines 22-25*

### VIIII.
### PURSER'S TRANSPARENT DISMISSAL OF TYREE AND SUBSEQUENT FILING OF HER AFFIDAVIT IN SUPPORT OF SUMMARY JUDGMENT UNDERMINES THE LEGITIMACY OF HER ALLEGATIONS IN WHICH SHE IDENTIFIED BAMBI TYREE AS THE "RINGLEADER"

In attempting to ascribe a motive for Purser to dismiss Tyree one can only assume that dismissing Tyree would provide Purser with the very affidavit that this Court suggested would be required to support a motion for summary judgment in its November 9, 2006 Order denying summary judgment as to liability.

This Court made that Order in anticipation of an affidavit that would be undisputed and create no issues of fact. Instead, on the basis of Purser and Tyree's transparent conduct a pandora's box has been opened, because the very affidavit the Court suggested was necessary to meet summary judgment requirements has been contradicted

19

by a barrage of deposition testimony, statements, declarations and evidence which rather than solidifying the motion for summary judgment has undeniably and unequivocally established a very significant number of material facts precluding this court from a finding of liability. [1]

Purser's complaint is largely dependant on conspiracy allegations involving Bambi Tyree. Purser's statements identify Tyree as a "ring leader" and a "snitch":

> **"He's a victim as much as I am, and you want to know who the fucking ring leaders are? Al, Leslie and Bambi ok? And Everybody – they're getting off fucking – because Bambi snitches her little ass around and lies about whatever the fuck she did..."**
> Purser Investigator Statement,
> Page 11, Lines 15-23

> **"...Allen and Bambi–Allen and Bambi are the ones that need to spend the rest of their fucking lives in jail, and Bambi's going to get off scot free because she snitched okay"?**
> *Purser Investigator Statement,*
> *Page 47, lines 18-21*

---

[1]The manner in which the underlying criminal case was handled, given the information that should have been available during the criminal case and is being brought out in the depositions, declarations and motions in the civil case together with the paucity of any significant act directed against any of the alleged victims either at a trial or at the sentencing hearing may suggest and support grounds for a 18 U.S.C. §2255 motion. While counsel has not yet decided whether, when or how to pursue that issue lends compelling additional evidence to recognize that there are clearly disputed questions of fact and this is certainly not the kind of case that this court would like to be put to bed without a full and fair analysis of the true facts, the true inconsistencies and the myriad of questions of facts that must be decided to reach a proper ruling. On this record this defendant must not and should not be denied his day in court.

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

Purser's dismissal of Tyree as a defendant undermines the legitimacy of her allegations in which she identified Tyree as the "Ring Leader". The timing of the dismissal in relation to the filing of Tyree's affidavit in support of summary judgment creates an overriding inference to be drawn from the allegations set forth in the affidavits of Tyree and Purser prohibiting a finding of summary judgment.

## XI

**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 36 ALL ADMISSIONS SERVED ON PURSER ON NOVEMBER 10, 2006 ARE DEEMED ADMITTED DUE TO HER FAILURE TO RESPOND. THE ADMISSIONS ABSOLVE BOEHM OF ALL LIABILITY FOR PURSER'S CLAIMS**

Rule 36 of the Federal Rules of Civil Procedure states:

> **The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney. If objection is made, the reasons therefor shall be stated.**

On November 10, 2006, Boehm served his second set of discovery on Purser's counsel Darryl Jones via facsimile and U.S. Mail. Incorporated herein as Exhibit "G". The discovery requests were attached to counsel Brett A. Greenfield's November 10, 2006 facsimile correspondence to Darryl Jones, incorporated herein as Exhibit "H". The aforementioned correspondence refers to the attached discovery requests. The second set of discovery has a proper proof of service attached.

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

On November 14, 2006, Darryl Jones responded to Mr. Greenfield's November 10, 2006 correspondence via facsimile and U.S. mail thus acknowledging receipt, Incorporated herein as Exhibit "I".

Purser's failed to respond or even serve objections. Boehm's requested are deemed admitted by Purser which absolves Boehm of all liability as to Purser's claims.

## XI.
## ERIN AXT'S DEPOSITION TESTIMONY CREATES GENUINE ISSUES OF MATERIAL FACT

Erin Axt's deposition taken on December 13, 2006, incorporated herein as Exhibit "J" reveals that Erin Axt first smoked "crack" cocain with Sally Purser, provided by Purser, while at Purser's home. *Deposition of Erin Axt, Pages 15-17.*

In addition, Bambi Tyree provided "crack" cocain to Erin Axt. *Deposition of Erin Axt, Page 17.* Erin Axt first snorted powder cocain with Sally Purser at Purser's home. She does not know where Purser obtained the cocain. *Deposition of Erin Axt. Pages 26, lines 22-25, Page 27, Page 28, lines 1-5.*

Erin Axt would often smoke "crack" cocain at Sally Purser's home with Sally and Kathleen Purser. *Deposition of Erin Axt, Page 51, lines 2-21.*

On one occasion Erin Axt testified that Bambi Tyree, Sally Purser and Erin Axt stole Boehm's Cadillac and took it for a joy ride. While driving they were smoking "crack" cocain. They refused to give the car back to Boehm unless he gave them money. *Deposition of Erin Axt, Page 72, line 17 - page 74, line 14*

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

Erin Axt's testimony is consistent with the affidavits of Tina Arndt and Vince Blomfield that depict Tyree and Purser's penchant for smoking "crack" cocain and providing to others.

Her testimony further supports the fact that Purser had multiple sources in which to acquire drugs and did not become addicted as a result of knowing Boehm. Furthermore, the episode in which Tyree and Purser stole Boehm's car and demanded money in return further shows their scam to take advantage of Boehm by stealing his money, cars, and property.

## XI
### PURSER'S DEPOSITION TESTIMONY AND INVESTIGATOR STATEMENTS ARE CONTRADICTORY AND CREATE MULTIPLE ISSUES OF DISPUTED MATERIAL FACT

Purser has offered Investigator Statements, Grand Jury Testimony and Deposition Testimony as to each material allegation contained within her complaint. Many of the statements provided contradict and undermine her present allegations creating multiple issues of disputed material fact. Purser's Grand Jury Testimony and Deposition Testimony are incorporated herein as Exhibits "K" and "L" respectively.

### 1. PURSER'S MOTIVATION FOR MONEY HAS RESULTED IN A CHANGE OF TESTIMONY

Purser's motivation to acquire a financial benefit from Boehm is transparent and proven by her own contradictions. Even more revealing is the following excerpt taken from her December 12, 2006 deposition:

Q.  Now you have answered a number of questions this morning that I asked you by saying that, for example, about Mr. Boehm being the victim of Ms. Tyree and Mr. Bolling and Mr. Williams, by saying that's what you believed when you said those things in 2004. But am I correct in assuming that you're saying you  no longer feel that way?

A.  No, I do not any longer feel that way.

Q.  Between that time and now you have filed a civil complant, is that correct?

23

1    A.    Yes, that is correct.

2    Q.    And that civil complaint is for damages for money, is
           that right?

3    A.    Yes.

4    Q.    Is the fact that you have filed a lawsuit for money
           making various allegations that are different than
           what you felt in 2004, the reason that you changed
5          your feeling?

6    A.    The reason I filed the civil suit is because my
           feelings changed.

7          *See Purser Deposition, page 89, 90*

8
9    **2. COMPARISON OF PURSER'S STATEMENTS TO HER MATERIAL ALLEGATIONS**

10       In addition to Purser's past statements previously set forth in

11   this opposition the following further illustrates the myriad of

12   material facts in dispute , A comparison of Purser's past and present

13   statements as they relate to the material allegations set forth in her

14   complaint are set forth as follows:

15            **a. Boehm Knowingly Recruited Purser**

16       Purser's relationship with tyree occurred before ever meeting

17   Josef Boehm. In fact, Purser testified that she was introduced to

18   Tyree at her mother's house when she was there to supply drugs. She

19   further states that Tyree was initially a friend of her mother. *See*

20   *Purser Deposition, Page 30*

21       As set forth through sworn affidavits, Bambi Tyree with the

22   assistance of Sally Purser and others with whom she was involved

23   engaged in a plot to keep Mr. Boehm high on "crack" cocain, incoherent

24   and in state of severe psychosis to enable them to steal his property,

25   cash, cars and too seek to gain control over his financial resources.

26            **b. Purser's Addiction to Drugs as a Result of Boehm's
                 Controlling Her to Have Sex**

27       Purser began using drugs as early as age 12. She was introduced

28   to "crack" cocain by her mother and continued a pattern of drug use

24

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

1  for many years resulting in a criminal drug conviction. Purser

2  obtained her drugs from multiple sources and in many instances traded

3  sex for drugs.

4      Purser first smoked marijuana at age 12. *See Purser Deposition,*

5  *page 10.;*

6

7      Purser was suspended from school at age for using ecstacy at age

   15. *See Purser Deposition, Page 13, 14;*

8

9      Purser began drinking alcohol at age 14. *See Purser Deposition,*

10 *Page 29;*

11     Purser first smoked "crack" cocain with her mother at age 15. *See*

12 *Purser Deposition, Page 19, 20;*

13     Purser smoked "crack" cocain with an older man named Carl Bucher

14 and her mother at age 15. See Purser Deposition, Page 21, 22

15     Purser again smoked "crack" cocain with Carl Bucher a few days

16 later. In addition she had sex with him in a hotel while "high" on

17 "crack" cocain. *See Purser Deposition, Page 22;*

18

19     Purser admits that it was with Carl Bucher that she first "liked

20 the feeling" cocain gave her. *See Purser Deposition, Page 23;*

21     Purser admits that Carl Bucher was the first person she traded

22 sex for money with. In addition she admitted that her mother traded

23 her for "crack" to her "drug associate" Gary "D". *See Purser*

24 *Investigator Statement, Page 23, Lines 17-25, Page 24, Lines 1-5*

25     Purser states that her mother smoked "crack" cocain with her

26 "drug associate" Gary "D" on a regular basis. *See Purser Deposition,*

27 *Page 37, 38;*

28

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

1    Purser, while knowing Boehm, lived with a convicted drug dealer
2    and escort service owner named Jay Whaley. At the time Purser was 16
3    years old. Whaley paid for Purser's food and drugs in exchange for
4    sex. Whaley sold drugs to Purser's mother. *See Purser Deposition, page*
5    *35, 37*

6    Purser obtained "crack" cocain from her mother when living with
7    her. *See Purser Deposition, Page 69.*

8    Purser was arrested and convicted for drug possession
9    approximately two years ago in Anchorage, Alaska. *See Purser*
10   *Deposition, Page 27.*

11

12   Purser's claim that Boehm was responsible for getting her
13   addicted to drugs in order to control her and have sex with her is
14   nonsensical as it ignores the fact that no one had control over
15   Purser. Purser was very adapt at finding multiple sources in which to
16   obtain various forms of drugs. Purser's need for drugs resulted in her
17   willingness to trade sex with multiple individuals, old and young.

18   The affidavits set forth in this opposition indicate that
19   Purser's need to get her hands on drugs resulted in a relationship
20   with Bambi Tyree to scam various men with money, including but not
21   limited to Tony Heffner, Carl Bucher and Vince Blomfield.

22            **c. Purser's Allegation That She Intimidated, Threatened and**
                 **a Victim of Involuntary Servitude**
23   Purser intimates that she was locked in Boehm's house and not
24   allowed to leave. She suggests that she was somehow held captive
25   through physical threat, psychological threat, innuendo and an alarm
26   system.

27

28

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

1    Purser admits to breaking into Boehm's house through a broken

2  window in a downstairs guest bedroom. *See Purser Deposition, Page 83;*

3    Purser admits that she could leave Boehm's home whenever she

4  wanted. *See Purser Deposition, Page 84.*

5

6    Purser stated that Boehm had no control over his own home and

   attempted to make people leave to no avail. At times Boehm was scared

7  to tell people to leave for fear of what they might do to him. In

8  order to cope with the unwanted visitors he would simply lock himself

9  in his room. Purser went on to testify that everyone would sneak in

10  his house through the broken downstairs window. *See Boehm Deposition,*

11  *Page 102-104*

12

13    Purser stated about Boehm, "I liked him, I was comfortable with

   him, I never felt threatened". See Purser Investigator Interview, Page

14  37, lines 3-7;

15

16         **d. Purser's Allegation of Being Provided Airline Tickets to**
            **Avoid a Criminal Investigation.**

17    Purser testified that Boehm offered to help Kathleen further her

18  plan to move to Seattle after she lost her home due to a default in

19  mortgage payments. *See Purser Deposition, Page 121*

20

21         **e. Purser Admits To Her Involvement In Scam To Steal Money**
            **From Carl Bucher**

22    In her deposition Purser confirms she made the following

   statement "I was at my house and I woke up and Bambi was there.  And

23  Carl, the guy that I had met Bambi through, was sleeping downstairs

24  in my mom's room, and he had his pants -- he had his pants off but

25  they were wrapped around his arm so nobody could take what was in his

26  pockets and Bambi and I had gotten his pants away from him and ended

27  up stealing $2,000 from him and we left in his van that had $30,000

28

                                    27
─────────────────────────────────────────────
OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

in a suitcase in the back and we went to the Holiday Inn Hotel downtown across from the Millennium Club." *See Purser Deposition, Page 32.*

### f. Purser's Past Fraudulent Sexual Assault Claims

Purser testified that she lied about being sexually assaulted by her uncle because she did not like him and he was too strict. *See Purser Deposition, Page 34-35.*

Her previous false claims lends further credence to the argument that her present claims are strictly money driven. An inference can be drawn from her past false claims and contradictory testimony for the purpose of assessing material facts in dispute in order to defeat summary judgment.

### XII
### CONCLUSION

For the foregoing reasons, Josef Boehm respectfully requests that this Court deny Plaintiff's second motion for summary judgment as there are numerous material facts in dispute.

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

1    Submitted this 29th day of December, 2006

2                                    KENNER LAW FIRM

3

4

5                                    By:_____/s/_____
                                          David E. Kenner
6                                         California 41425
                                          16000 Ventura Blvd.
7                                         Penthouse 1208
8                                         Encino, California 91436

9

10

11                                   By:_____/s/_____
                                          Brett A. Greenfield
12                                        California 217343
                                          16000 Ventura Blvd.
13                                        Penthouse 1208
14                                        Encino, California 91436

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT