IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SALLY C. PURSER,<br><br>               Plaintiff,<br><br>vs.<br><br>JOSEF F. BOEHM, et al.,<br><br>            Defendants. | Case No. 3:05-cv-00085-JKS<br><br><br>ORDER TRANSMITTING JURY<br>INSTRUCTIONS |

## I. INTRODUCTION

Sally Purser sues Josef F. Boehm pursuant to 18 U.S.C. § 1595,[1] seeking damages for injuries allegedly suffered by her while she was under the age of 18 as a result of Boehm's sexually abusing her in return for crack cocaine. Purser alleges that Boehm traded cocaine for sex and thereby kept her under his control during the period late 2001 to December of 2003. Boehm was indicted by a federal grand jury, which charged him with conspiracy to engage in juvenile sex trafficking and to distribute cocaine to juveniles, as well as substantive counts of

---

[1] 18 U.S.C. § 1595. Civil remedy

    (a) An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

    (b)(1) Any civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

      (2) In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

1

sexual trafficking involving specific juveniles and furnishing cocaine to specific juveniles.

Ultimately, Boehm plead guilty to one count of conspiracy to engage in juvenile sex trafficking,

18 U.S.C. §§ 370 and 1591, and one count of conspiracy to distribute cocaine to juveniles, 21

U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and 859(a).  In each count, the duration of the conspiracy

was limited from late 2001, until on or about December 23, 2003.  In his plea agreement, a

portion of which is set forth here, Boehm stipulated to certain facts in order to establish the

evidentiary basis for his plea:

> Beginning at some exact date unknown but at least between in or about late 2001, and continuing until at least December 22, 2003, both dates being approximate and inclusive, the defendant Josef F. Boehm and others, including Allen K. Bolling, a/k/a "Foul Al", Leslie J. Williams, Jr., and Bambi Tyree, agreed to distribute cocaine and cocaine base to persons under 21 years of age. During the period of the conspiracy, Josef F. Boehm, Bolling, Williams, Tyree and other members of the conspiracy distributed cocaine and cocaine base to persons between the ages of 13 and 21, as well as others over the age of 21.
>
> Boehm bought cocaine and cocaine base from Williams, Bolling, and others. Tyree introduced Boehm to Williams and Bolling for purpose [sic] of them selling cocaine base to Boehm.  Boehm personally distributed between 50 and 150 grams of the cocaine base that he purchased from Williams, Bolling, and others to persons Boehm knew were between the ages of 13 and 21, as well as others over the age of 21.  [.  .  .]
>
> Beginning in late 2001 and continuing until December 22, 2003, Boehm conspired with Bolling, Williams, and Tyree to recruit persons under 18 ("juveniles") to engage in sexual acts.  The juveniles were recruited by offering them cocaine, which was manufactured outside Alaska and effected interstate commerce.  The following juveniles were knowingly recruited by the defendants to engage in sex: S.P., . . . .  These juveniles had sex with one or more of the defendants, and received money and/or controlled substances from the defendants. The defendants knew the juveniles ages when they recruited the juveniles.  To effect the purposes of the conspiracy, the defendant [presumably Boehm] purchased cocaine and distributed cocaine to one or more juveniles, including S.P., in or about the fall of 2001. [Matter in brackets supplied.]

Docket No. 123, Exhibit 1; *see also*, 3:04-cr-00003-01-JWS, Docket No. 690.

Boehm's plea was accepted and a judgment of conviction ultimately entered

against him, resulting in a prison sentence in conformity with the plea agreement.  In addition,

Boehm set up a trust fund in the principal sum of $1,200,000.00 as restitution to be paid to 12

identified victims, including S.P.  *See* 18 U.S.C. § 1593.[2]

        While the criminal case was pending, Purser filed this action.  She moved for partial

summary judgment to establish liability, primarily relying upon Boehm's conviction.[3]  The Court

denied the motion reasoning that Boehm's conviction established that he had conspired to

_____

    [2] 18 U.S.C. § 1593.  Mandatory restitution

    (a) Notwithstanding section 3663 or 3663A, and in addition to any other civil or
criminal penalties authorized by law, the court shall order restitution for any offenses
under this chapter.

    (b)(1) The order of restitution under this section shall direct the defendant to pay the
victim (through the appropriate court mechanism) the full amount of the victim's losses,
as determined by the court under paragraph (3) of this subsection.

        (2) An order of restitution under this section shall be issued and enforced in
accordance with section 3664 in the same manner as an order under section 3663A.

        (3) As used in this subsection, the term "full amount of the victim's losses" has the
same meaning as provided in section 2259(b)(3) and shall in addition include the greater
of the gross income or value to the defendant of the victim's services or labor or the
value of the victim's labor as guaranteed under the minimum wage and overtime
guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et seq.).

    (c) As used in this section, the term "victim" means the individual harmed as a result of a
crime under this chapter, including, in the case of a victim who is under 18 years of age,
incompetent, incapacitated, or deceased, the legal guardian of the victim or a
representative of the victim's estate, or another family member, or any other person
appointed as suitable by the court, bu in no event shall the defendant be named such
representative or guardian.

    [3] Initially, the Court granted the motion, which Boehm failed to oppose.  Docket No. 38.
Later, after allowing Boehm to file a late opposition, the Court narrowed its ruling, holding
Boehm to his plea and the resulting judgment, but declining to find liability at that time.  Docket
No. 116.

sexually abuse some people and distribute drugs to them, including S.P., but did not establish

that S.P. was Sally Purser or that Boehm had followed through on the conspiracy and committed

acts against Sally Purser that would be independently a violation of § 1591.  Docket No. 116.

*See Beck v. Prupis*, 529 U.S. 494 (2000).[4]   The Court recognized that offensive collateral

estoppel applied to prevent Boehm from contesting any fact necessary to his conviction.  *See*

*Allen v. McCurry*, 449 U.S. 90 (1980); *and, Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322

(1979).[5]  The Court also recognized, however, that Boehm's guilty plea and the resulting

conviction would not by themselves estop him from litigating other issues not decided in his

criminal case.  *See e.g.*, *Haring v. Prosise,* 462 U.S. 306 (1983).  The Court also recognized that

Boehm's admissions, including the stipulation in his plea agreement, would be admissible

against him but would not be conclusive.  Finally, the Court recognized that Chief Judge

Sedwick's findings of fact would in general not be admissible.

Purser renewed her motion for partial summary judgment.  Docket No. 123.  Supported

by her affidavit and an affidavit from a convicted co-coconspirator of Boehm's, Purser detailed

occasions during which Boehm traded crack cocaine for oral sex and other sexual favors with

her—acts made unlawful by 18 U.S.C. § 1591.  Boehm opposed the motion, but the Court

---

[4] The Court is aware that *Beck* addresses another issue that this Court reserved until the parties had an opportunity to address it.  That is the question to what extent is Boehm, having conspired to recruit S.P. for sex in return for drugs, liable for abuse she suffered in the course and scope of the conspiracy from Boehm's fellow conspirators.  The Court has always been aware that Boehm stipulated that S.P. had sexual relations with one or more of the conspirators. *See Beck v. Prupis*, supra.

[5] Faced with a potential sentence of life in prison Boehm had substantial incentive to litigate his factual guilt of the crimes to which he plead.  There is no question but that he admitted the elements of the offenses and stipulated to a factual basis.  Thus, he is estopped as to those issues necessary for his conviction.

concluded that he never truly identified issues of material fact in dispute in conformity with Fed. R. Civ. P. 56(e). His "declaration" was in the nature of a verified answer containing a general denial. The declaration did not set out specific facts contradicting Purser's allegations or explain the factual admissions in his plea agreement to the extent that they were inconsistent with the position that he is currently taking.[6] The Court was concerned that Boehm did not specifically deny that he had traded cocaine for oral sex with S.P. during the period late 2001 until December 2003.[7] The Court therefore granted the motion for partial summary judgment on the issue of liability under 18 U.S.C. § 1595. Docket No. 200.[8]

---

[6] The statement "I did not have sex with that woman" may mean "I did not have genital intercourse with that woman" to the speaker, but be understood by listeners as including "I did not have oral sex with that woman." If the speaker means to exclude genital intercourse, he or she should be specific. Purser does claim at least one incident of genital intercourse with Boehm, but her main claims involve oral sex as well as providing him voyeuristic titillation. In order to establish disputed issues of material fact compliance with Rule 56(e), in context, requires Boehm to be far more specific than he appears willing to be.

[7] The Court noted that Boehm studiously avoided setting out specific facts disputing Purser's allegations and specifically did not explain the factual statements in his plea agreement. The Court recognized that Boehm took the view that his plea was improvident and that he either lacked the competency to plead, or if he was competent to plead, that the Rule 11 hearing did not demonstrate that his plea was voluntary. Boehm threatened to file a petition to set aside his conviction under 28 U.S.C. § 2255. He in fact has now done so. 3:04-cr-00003-JWS, Docket No. 887. The Court disregarded this defense because Boehm's competence to plead guilty and the mens rea necessary for conviction are facts necessary for the judgment of conviction and, thus, binding on Boehm under the doctrine of collateral estoppel. Should Judge Holland set aside Boehm's conviction, it would become necessary to revisit the issue in this case. *See* Fed. R. Civ. P. 60. But only if, in addition to a favorable ruling from Judge Holland, Boehm was prepared to swear to facts specifically contradicting Purser's claims of oral sex in exchange for crack cocaine. One verified incident in which Boehm exchanged cocaine for sex with a fifteen year old girl would constitute a violation of § 1591 and permit that girl to sue him under § 1595. The number of incidents would be relevant to damages, not liability. That said, the Court has reviewed the § 2255 motion and supporting argument and sees no reason to delay trial in this case.

[8] Boehm made an untimely motion for reconsideration. Docket No. 201. Again, his declaration was proffered. Docket No. 202. The Court has always assumed that a declaration

Trial on the issue of damages is currently set for the week of August 13, 2007, and is expected to last ten days.[9]  Counsel have suggested some time constraints and in the spirit of helpfulness the Court will provide the preliminary jury instructions it plans to give with a brief explanation of what it considers to be outstanding legal and factual issues.  Counsel should understand that it is this Court's practice to front-load the jury instructions and address as much of the law as it is able in the preliminary instructions and only add instructions to the final instructions where necessary to address unforseen developments.  On occasion, the Court furnishes copies of the preliminary instructions to the jury for their use during the trial.  Thus, the parties should pay particular attention to the proposed preliminary instructions in their trial briefs, noting any objections with supporting case law.  The parties are also expected to exchange proposed additional and substitute instructions in connection with their pretrial preparation.  Docket Nos. 216; 217.

## II.  OUTSTANDING LEGAL AND FACTUAL CLAIMS

A.  Supplemental Claims

 Boehm sought leave to file third party complaints, which this Court denied.  Docket No. 216.  In doing so, the Court concluded that Congress had not provided for contribution among

---

under penalty of perjury may substitute for an affidavit sworn to before a notary.  28 U.S.C. § 1746.  *See United States v. Bueno-Vargas,* 383 F.3d 1104 (9th Cir. 2004).  While Boehm fashioned his declaration to conform to California state law rather than federal law, it apparently satisfies § 1746(2).  The Court denied reconsideration because Boehm's declaration did not qualify under Fed. R. Civ. P. 56(e) because it was a general denial not squarely refuting Purser's core allegations that Boehm traded cocaine for sexual favors, knowing that she was under the age of eighteen.  Docket No. 216.

[9] The Court subsequently denied a motion to continue trial.  Docket No. 227 (Order dated June 7, 2007).

joint tortfeasors in conjunction with the private right of action established in § 1595, and that

Boehm had not shown a right to indemnity for any of Purser's federal claims. The Court noted

that Alaska law on apportionment of fault might permit a third party claim, and that Purser had

also raised a state claim for intentional infliction of emotional injury. Ultimately, the Court

concluded that third party claims at this late time, limited to the state cause of action, would

confuse the issues and that if the jury awarded separate damages on this claim Boehm could

pursue apportionment in state court. On further reflection, the Court has concluded that it should

not separately instruct on intentional infliction of emotional injury under state law. The history

of that tort indicates that it arose at a time and in a context in which damages for emotional

injury were generally not available in the absence of bodily impact. The tort filled that gap

where the defendant's conduct was outrageous and likely to lead to the very injury suffered. The

gravamen of Purser's claim is that during a period when she was fifteen to seventeen years old,

the much older defendant traded her crack cocaine for sexual favors and kept her drugged to

assure her compliance. If the jury believes that, then it would be free to award her any mental

and emotional damages caused by her abuse. Here we have a private right of action, which

Congress has specifically established to permit victims of juvenile sex trafficking to recover their

damages caused by the abuser's conduct. Thus, it would seem that intentional infliction of

mental anguish is redundant to Purser's federal claim and adds nothing to her damage claim

other than to confuse the issues. To avoid confusion and possible double recovery, the Court

will not instruct on the state cause of action. To protect the interests of all parties, the Court

would be prepared to dismiss the supplemental claim so that Purser could re-file in state court

and pursue it, if she wished, in state court and the parties could there debate whether the state

tort reaches damages that could not be awarded under § 1595.  Boehm would also have the

opportunity to pursue his third party claims for apportionment in state court.

B.  Multiple Federal Claims

Purser complains of a multi-year relationship with Boehm in which sexual favors were

traded for cocaine on multiple occasions.  Each occasion is arguably a separate tortuous incident,

but all appear to be subsumed in a single claim based on the interplay between 18 U.S.C. § 1591

and § 1595.  The Court recognizes that Purser has attempted to split her federal claims and base

a separate claim on peonage and involuntary servitude, but the Court is of the view that all her

plead claims collapse into a single federal claim that permits her to recover any damages to

which she is entitled.  The Court has therefore not separately instructed on alternate federal

theories.

C.  Causation

The parties have not cited, and the Court has not found, any cases dealing directly with

the civil damage remedy established in 18 U.S.C. § 1595.  Nor have they presented arguments

based upon its legislative history.  The Court has therefore looked to cases interpreting the civil

damage remedies Congress has provided for RICO violations and other similar statutes as a

proxy.  *See e.g., Beck v. Prupis*, 529 U.S. 494 (2000) (overt act must itself violate statute before

civil conspiracy provides a cause of action); *Holmes v. Securities Investor Protection

Corporation*, 503 U.S. 258 (1992) (overt act must be a proximate cause of the plaintiff's injury).

Here, the overt acts which Purser alleges are (1) knowing that she was under the age of 18, and

(2) furnishing her prohibited drugs and accepting sexual favors in return.  In context, both of

these acts are forbidden by § 1591.

The Court understands the Supreme Court's reference to proximate cause in *Holmes* as incorporating the test for causation from negligence law generally. *Compare* 3 O'Malley et al. Federal Jury Practice and Instructions (5th ed.) sec. 120.60 (proximate cause in negligence law), *with* 3B O'Malley et al., Federal Jury Practice and Instructions (5th ed.) sec. 161.61 (proximate cause in RICO civil actions). In the Ninth Circuit, the phrase "legal cause" is used in place of "proximate cause," but the definition is the same. A "legal cause" instruction is included in the proposed preliminary jury instructions.

### D.  Discovery

The Court previously authorized Boehm to obtain an independent mental health examination of Purser, provided she would be permitted to have her own mental health expert present (at Boehm's expense) as an observer. The Court assumes that this will be scheduled in time for trial. In an Order dated May 16, 2007, the Court extended the close of discovery until Friday, June 15, 2007, to enable the examination to be completed. Docket No. 216.

A party seeking punitive damages has the right to present evidence to the jury regarding the defendant's wealth. In this case, Boehm's actions were criminal and, thus, Purser is entitled to have the jury consider punitive damages. The preliminary instructions address punitive damages. Earlier, the Court denied discovery in this area, pending resolution of the motion for partial summary judgment. Docket Nos. 116; 199. Partial summary judgment has now been granted establishing that Boehm is liable to Purser pursuant to 18 U.S.C. § 1595, and Purser is entitled to complete discovery regarding Boehm's remaining assets in support of her punitive damages claim. Her discovery requests should be answered.

///

### III.  PROPOSED PRELIMINARY JURY INSTRUCTIONS

The preliminary jury instructions, as well as a proposed special verdict form, are included together as Attachment A.

### IV.  CONCLUSION

The jury instructions being furnished and these comments are intended to provoke discussion.  To the extent that any party (or both parties) disagree with anything said here they are free to address the issue in their trial briefs, marshal the facts, and summarize the law.  If convinced, the Court will make appropriate modifications before preliminarily instructing the jury.  The Court expects that the parties will monitor the development of the law and be alert to any federal cases interpreting 18 U.S.C. §§ 1591 and 1595.  The Court assumes that they will also thoroughly familiarize themselves with the available legislative history and inform the Court of modifications to the jury instructions that should be made to reflect the law as informed by its legislative history and new case law.

Dated this 20th day of June, 2007.

/s/ James K. Singleton, Jr.
**James K. Singleton, Jr.**
United States District Judge

10